USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1600 IN RE: JURAJ J. BAJGAR, Debtor, _____________________ CAROL B. MARTIN, ADMINISTRATOR OF ESTATE OF FRANCIS A. MARTIN, Plaintiff/Creditor, Appellant, v. JURAJ J. BAJGAR, Defendant/Debtor, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morris E. Lasker, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Arthur J. Carakatsane for appellant. _____________________ Richard S. Hackel for appellee. _________________ ____________________ January 17, 1997 ____________________ STAHL, Circuit Judge. Creditor-Appellant Carol B. STAHL, Circuit Judge. _____________ Martin appeals the district court's affirmance of the bankruptcy court's decision to grant Debtor-Appellee Juraj J. Bajgar a discharge pursuant to 11 U.S.C. 727(a)(2)(A) with respect to property that Bajgar fraudulently transferred within one year before the filing of his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. We reverse.  Background Background __________ Bajgar and his wife jointly owned a vacant parcel of land in Port St. Lucie, Florida ("the Florida property").  On November 10, 1993, Bajgar conveyed his interest in the land to his wife, purportedly as a belated engagement gift, delayed twenty-three years. In return, Bajgar received "love and affection." The conveyance was recorded on December 2, 1993. At the time of the conveyance, Bajgar faced a collection action and several foreclosures. He conceded at trial that the transfer was fraudulent within the meaning of the Bankruptcy Code, admitting that the transfer was completed with actual intent to hinder, delay, or defraud his creditors. On May 16, 1994, less than one year after the conveyance of the Florida property, Bajgar filed a petition for relief under Chapter 7 of the Bankruptcy Code. In his petition, Bajgar disclosed the fraudulent transfer by -3- 3 attaching a copy of the deed to the statement of affairs filed pursuant to 11 U.S.C. 521(1). At a June 20, 1994, mandatory creditors meeting, Bajgar and his wife volunteered to reconvey the Florida property.  On August 19, 1994, Martin, one of Bajgar's creditors, filed a Complaint to Object to Discharge, which she amended on September 21, 1994. Martin's amended complaint alleged a violation of 11 U.S.C. 727(a)(2)(A), which precludes discharge for a debtor who transfers property within one year of the filing of a bankruptcy petition if he acts with the intent to hinder, delay, or defraud a creditor.  On September 30, 1994, at Bajgar's request and on the advice of counsel, Bajgar's wife reconveyed the Florida property to herself and Bajgar jointly by quitclaim deed. Bajgar's wife completed the retransfer more than four months after Bajgar filed his voluntary bankruptcy petition, more than three months after the meeting with creditors, and more than one month after Martin first objected to discharge. The bankruptcy court (Hillman, J.) held that the conveyance of the Florida property did not constitute grounds to deny Bajgar's discharge under Section 727(a)(2)(A).  Martin appealed this decision to the United States District Court for the District of Massachusetts. The district court (Lasker, J.) affirmed, determining that the re-transfer of the Florida property to Bajgar cured Bajgar's admittedly -4- 4 fraudulent initial transfer. This appeal ensued. Standard of Review Standard of Review __________________ "In an appeal from the district court's review of a bankruptcy court order, we independently review the bankruptcy court's decision, applying the 'clearly erroneous' standard to findings of fact and de novo review to _______ conclusions of law." Grella v. Salem Five Cent Sav. Bank, 42 ______ _________________________ F.3d 26, 30 (1st Cir. 1994); see also In re G.S.F. Corp., 938 ___ ____ __________________ F.2d 1467, 1474 (1st Cir. 1991). The district court's determination that the re-transfer justified discharging Bajgar pursuant to Section 727(a)(2)(A) constitutes a conclusion of law that we subject to plenary review. See ___ Century 21 Balfour Real Estate v. Menna (In re Menna), 16 ______________________________ _____ ___________ F.3d 7, 10 (1st Cir. 1994); In re Erin Food Servs., Inc., 980 ____________________________ F.2d 792, 799 (1st Cir. 1992). Discussion Discussion __________ This case presents this Circuit with an issue of first impression: whether an admittedly fraudulent transfer of a debtor's property within one year before the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code is cured for purposes of dischargeability pursuant to Section 727(a)(2)(A) by its re-transfer to the debtor after the debtor files his petition. We hold that re- transfer subsequent to filing a voluntary bankruptcy petition -5- 5 does not cure the fraudulent transfer, and, thus, does not avail the debtor discharge under Section 727. Title 11, Section 727(a)(2)(A) states in pertinent part: (a) The court shall grant the debtor a discharge,  unless-- (2) The debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . .  (A) property of the debtor within one year before the date of the filing of the petition. 11 U.S.C. 727(a)(2)(A). Bajgar urges us to interpret the term "transferred" to mean "transferred and remained transferred" in the context of a debtor who reconveys property subsequent to filing a voluntary bankruptcy petition. As we have stated previously, "the task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning." Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 ______________________ ___________________ F.2d 703, 706 (1st Cir. 1992). "Where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. _____________ Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting ______________________ Caminetti v. United States, 242 U.S. 470, 485 (1917)). "The _________ _____________ plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a -6- 6 statute will produce a result demonstrably at odds with the intentions of the drafters.'" Ron Pair, 489 U.S. at 242 ________ (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, _______ _________________________ 571 (1982)). The statutory language of Section 727(a)(2)(A) is sufficiently plain. The statute specifically authorizes denial of discharge if the debtor "transferred" property within one year prior to the date of filing the bankruptcy petition; it does not qualify this provision with a clause to the effect that transferred property must remain transferred.  See 11 U.S.C. 727(a)(2)(A). ___ The Bankruptcy Code, moreover, defines the term "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." 11 U.S.C. 101(54). Although the legislative history offers no guidance in interpreting "transfer" in the context of Section 727(a)(2)(A), the legislative history of Section 101(54), which defines "transfer," explains that "[t]he definition of transfer is as broad as possible." S. Rep. No. 989, 95th Cong. 27 (1978), reprinted in 1978 _________ __ U.S.C.C.A.N. 5787, 5813; H.R. Rep. No. 595, 95th Cong. 314 (1977). Limiting the definition of "transferred" to "transferred and remained transferred," in fact, would contradict the drafters' intent. -7- 7 In support of his position, Bajgar recites Justice Douglas' admonition that courts "do not read . . . statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." Bank of Marin v. England, 385 _____________ _______ U.S. 99, 103 (1966). This recitation, however, is misplaced in this case. Bank of Marin addressed the issue of whether _____________ or not "the payment by the drawee of a drawer bankrupt's checks after the date of th[e] filing [in bankruptcy] is a `transfer' within the meaning of [repealed 11 U.S.C.  110(d)(5)]." Id. at 102. The Court determined "it would be ___ inequitable to hold liable a drawee who pays checks of the bankrupt duly drawn but presented after bankruptcy, where no actual revocation of its authority has been made and it has not notice or knowledge of the bankruptcy." Id. at 103.  ___ Although Congress "has legislated the exception [that the Marin Court articulated with respect to the need for notice] _____ in 542(c)," Poonja v. Charles Schwab & Co. (In re Dominion ______ ____________________ ______________ Corp.), 199 B.R. 410, 413 (9th Cir. 1996), the legislative _____ history makes plain that Congress, in revising the Bankruptcy Code, did not intend to limit the definition of the term "transfer." See S. Rep. No. 989, at 27; H.R. Rep. No 595, at ___ 314; see also Dominion Corp., 199 B.R. at 413 (explaining ___ ____ ______________ that changes made to the Code following Marin pertained to _____ the definition of "transferee" not "transfer"). In fact, -8- 8 "[t]he word 'transfer' has always had a most comprehensive meaning under the bankruptcy laws and has been construed to include every method of disposing of or parting with property or its possession." 4 Collier on Bankruptcy 727.02[5] _____________________ (15th ed. 1996). And, "[w]hatever force the assertion in Bank of Marin v. England, that 'equitable principles govern _____________ _______ the exercise of bankruptcy jurisdiction' may have had under the 1898 Act, this approach has no place under the Code to the extent the statute addresses the question." Levit v. _____ Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1189 (7th Cir. _________________________ 1989); see also In re Taubman, 160 B.R. 964, 980 (S.D. Ohio ___ ____ _____________ 1993) ("It must [] be recognized that the exercise of [] equitable principles . . . 'cannot contravene specific provisions of the Bankruptcy Code.'") (quoting Terex Corp. v. ___________ Metropolitan Life Ins. Co., 984 F.2d 170, 173 (6th Cir. 1993)).1 __________________________  ____________________ 1. The district court reasoned that "`the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor.'" Martin v. Bajgar (In re Bajgar), C.A. No. ______ ______ ____________ 95-12562-MEL, slip op. at 2-3 (quoting In re Tully, 818 F.2d _______ ___________ 106, 110 (1st Cir. 1987)). Although Tully did posit that _____ "`[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural,'" it also directed that, "[o]n the other hand, the very purpose of certain sections of the law, like 11 U.S.C. 727(a)[], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." Tully, 818 F.2d at _____ 110 (quoting Dilworth v. Booth, 69 F.2d 621, 624 (5th Cir. _______ ________ _____ 1934)). In a more recent case, moreover, we explained that "[e]xceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's `fresh start' policy and the claimant must show that its claim comes squarely within _____________________________________________________________ an exception enumerated in Bankruptcy Code [727(a)(2)]." ___________________________________________________________ Menna, 16 F.3d at 9 (emphasis added). In this case, Martin's _____ -9- 9 Without delving into the murky realm of legislative purpose and equitable principles, the Eleventh Circuit, one of the two other courts of appeals to address this issue, reached the same conclusion we reach today. See Davis v. ___ _____ Davis (In re Davis), 911 F.2d 560 (11th Cir. 1990) (per _____ ___________ curiam). In Davis, the Eleventh Circuit considered the case _____ of a debtor ("Davis") who transferred a one-half interest in his home to his wife. See id. at 561. Upon the advice of a ___ ___ bankruptcy lawyer, Davis re-transferred the property. The day following recordation of the deed formalizing this retransfer, and less than one year after the initial transfer, Davis filed for bankruptcy protection under Chapter 7. Despite the fact that Davis disclosed the existence of the fraudulent transfers, a creditor filed an adversary proceeding to deny discharge under Section 727(a)(2)(A).  Like Bajgar, Davis argued that "the word 'transferred' should be read to mean 'transferred and remained transferred' at the time a debtor files his bankruptcy petition." Id. at 562. Refusing to discharge ___ Davis, the Eleventh Circuit reasoned: Normally, a court should interpret a statute in a manner consistent with the  ____________________ claim that Bajgar should be denied discharge because Bajgar fraudulently transferred property within one year before the filing of the bankruptcy petition falls squarely within the exception that Section 727(a)(2)(A) enumerates. See 11 ___ U.S.C. 727(a)(2)(A). The Tully court's instruction, _____ therefore, does not control this case. -10- 10 plain meaning of the language used in the statute. The statutory language of section 727(a)(2)(A) is plain and unambiguous. Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not.  We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face. Id. (citations omitted). According to the Eleventh Circuit, ___ therefore, if a debtor fraudulently transfers property within one year before the filing of a bankruptcy petition, he will not receive a discharge. See Najjar v. Kablaoui (In re ___ ______ ________ _____ Kablaoui), 196 B.R. 705, 709 (S.D.N.Y. 1996) ("[T]he Eleventh ________ Circuit wholly rejects the debtor's subsequent reconveyance of the fraudulently transferred property as a defense to a section 727(a)(2)(A) action."). While the plain language of Section 727(a)(2)(A) and the applicable legislative history point to the conclusion that, upon proper objection, any debtor who fraudulently transfers property within one year before the filing of a bankruptcy petition is not entitled to receive a discharge pursuant to Section 727, irrespective of the timing of a reconveyance, this case presents us with a debtor who reconveyed property several months subsequent to filing a voluntary bankruptcy petition. We need not decide now either the effect of a reconveyance made prior to the filing of a -11- 11 voluntary bankruptcy petition or the question of a re- transfer effected immediately following the filing of an involuntary petition. Despite Section 727(a)(2)(A)'s plain language and the Davis court's interpretation, Bajgar seeks solace in a _____ Ninth Circuit case, First Beverly Bank v. Adeeb (In re __________________ _____ _____ Adeeb), 787 F.2d 1339, 1344 (9th Cir. 1986), which _____ interpreted the term "transferred" to mean "transferred and remained transferred" in the context of Section 727(a)(2)(A).  Both the bankruptcy court, see Bajgar, 186 B.R. at 8, and the ___ ______ district court, see Martin v. Bajgar (In re Bajgar), C.A. No. ___ ______ ______ ____________ 95-12562-MEL, slip op. at 2 (D. Mass. March 19, 1996), found Adeeb persuasive in this case. We do not. _____ In Adeeb, the court considered whether or not to _____ discharge an individual ("Adeeb") who transferred property "with intent to hinder, delay, or defraud a creditor" within one year of the filing of a petition. See 787 F.2d at 1342, ___ 1344. Faced with demands from his creditors, Adeeb consulted with an attorney who had little bankruptcy experience.  Acting upon his attorney's advice, Adeeb transferred several properties to third parties. Adeeb then retained an experienced bankruptcy attorney, who advised him to re- transfer the properties and to disclose the initial transfers to his creditors. Adeeb followed this advice and immediately began to reverse the transfers while notifying his creditors -12- 12 of his actions. Before Adeeb could complete the re-transfers and within one year of the initial fraudulent transfers, several of his creditors filed an involuntary bankruptcy petition against him. Determining not to contest this petition, several days later Adeeb filed a voluntary petition, "seeking a discharge of his indebtedness." Id. at ___ 1342. The Adeeb court determined that "reading _____ `transferred' . . . to mean 'transferred and remained transferred' is most consistent with the legislative purpose of [Section 727(a)(2)(A)]." Id. at 1344. The Adeeb court ___ _____ reasoned: First, this reading encourages honest debtors to recover property they have transferred during the year preceding bankruptcy. Encouraging debtors to recover improperly transferred property facilitates the equitable distribution of assets among creditors by ensuring that the trustee has possession of all of the debtor's assets. Second, this reading permits the honest debtor to undo his  mistakes and receive his discharge. Id. at 1345. Treating Adeeb as the subject of an involuntary ___ petition because "[t]he involuntary petition in this case began the bankruptcy process," id. at 1346 n.4, the court ___ discharged Adeeb. The court held that "a debtor who has disclosed his previous transfers to his creditors and is making a good faith effort to recover the property transferred at the time an involuntary bankruptcy petition is ___________ -13- 13 filed is entitled to a discharge of his debts if he is otherwise qualified." Id. at 1346 (emphasis added). ___ The Adeeb court, however, enunciated a different _____ rule with respect to a debtor who files a voluntary _________ bankruptcy petition: "[A] debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers ________ substantially all of the property before he files his _____________________________________________________ bankruptcy petition, and is otherwise qualified for a ___________________ discharge." Id. at 1345 (emphasis added). As the Adeeb ___ _____ court explained, this rule demanding recovery prior to the filing of a petition "assumes the filing of a voluntary petition by the debtor. In that situation, the debtor controls the time of filing the petition. He is therefore able to time the filing to allow recovery of substantially all of his property." Id. at 1346. Adeeb thus makes clear ___ _____ that the test applicable to a debtor subject to an involuntary bankruptcy petition differs substantially from the test the court would apply to a debtor filing a voluntary bankruptcy petition. Even were we to adopt Adeeb, its application to the _____ instant case would result in denial of discharge. Bajgar did not recover any of the transferred property until well after he filed his voluntary bankruptcy petition. Although the -14- 14 bankruptcy court noted the fact that Bajgar did not complete reconveyance of the property "until several months after the filing of the petition," Bajgar, 186 B.R. at 9, it determined ______ that because Bajgar revealed the transfer at the time of his filing, "those facts satisfy the Adeeb test that the recovery _____ be 'prior to the time the bankruptcy petition was filed or within a reasonable time after it was filed.'" Id. (quoting ___ Adeeb, 787 F.2d at 1346). Contrary to the bankruptcy court's _____ assertion, disclosure constitutes only one component of the activity necessary to secure discharge under Adeeb. See _____ ___ Adeeb, 787 F.2d at 1345-46. Furthermore, the language that _____ the bankruptcy court relies on from Adeeb applies to an _____ involuntary petition, rather than a voluntary petition: "We emphasize that the debtor [subject] . . . to the filing of the involuntary petition . . . must actually recover the property within a reasonable time after the filing of the ___ involuntary petition." Adeeb, 787 F.2d at 1346 (emphasis ____________________ _____ added). In the case of a voluntary bankruptcy petition, such as Bajgar filed, however, "[t]he Ninth Circuit requires actual reconveyance of the fraudulently transferred property ____________________________________________________________ before the bankruptcy filing." Kablaoui, 196 B.R. at 709 ____________________________ ________ (explaining Adeeb) (emphasis added); see also Adeeb, 787 F.2d _____ ___ ____ _____ at 1345-46; March v. Sanders (In re Sanders), 128 B.R. 963, _____ _______ _____________ 971 (W.D. La. 1991) ("Court of Appeals decisions . . . have taken the position that mere disclosure of actions prohibited -15- 15 by Sec. 727(a)(2)(A) will not prevent denial of discharge.  What may allow discharge is disclosure accompanied by voluntary prepetition reversal of the prohibited activities . ____________________ . . .") (emphasis added). As the Kablaoui court concluded, ________ "[h]ere the Debtor did not attempt to recover any of the transferred property before filing for bankruptcy. Thus, these transfers were not 'undone' under the Ninth Circuit's definition of 'transfer.'" Kablaoui, 196 B.R. at 709. ________ The bankruptcy court, again relying on Adeeb, _____ endeavored to buttress its construction of Section 727(a)(2)(A) by insisting that construing "transferred" to mean "transferred and remained transferred" furthers the general purpose of the Bankruptcy Code. See Bajgar, 186 B.R. ___ ______ at 7-8. We recognize that reading the term "transferred" to mean "transferred and remained transferred," could be construed, in certain instances, to advance the "purpose of the Bankruptcy Act to [distribute] the assets of the bankrupt . . . among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. United ________ ______ States Fidelity & Guarantee Co., 236 U.S. 549, 554-55 (1915); _______________________________ Adeeb, 787 F.2d at 1345. This purpose affords the "honest _____ but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new _________________________ -16- 16 opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). ______________ ____ In this case, however, Bajgar did not reveal his initial fraudulent transfer until he filed his bankruptcy petition. In addition, Bajgar consulted with an experienced bankruptcy attorney at the time he executed the initial fraudulent transfer. It was not until he faced the prospect of being denied discharge pursuant to Section 727(a)(2)(A) that Bajgar actually reconveyed the property.  We are not presented with an "honest but unfortunate debtor" that the Bankruptcy Code envisions as the deserving recipient of a fresh start. Cf. Huckfeldt v. ___ _________ Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832-33 (8th Cir. _________ _______________ 1994) (describing individual who did not constitute "honest but unfortunate debtor"); Barclays/American Business Credit, __________________________________ Inc. v. Adams (In re Adams), 31 F.3d 389, 393-94 (6th Cir. ____ _____ ___________ 1994) (refusing to discharge a debtor pursuant to Section 727(a)(2)(A)), cert. denied, 115 S. Ct. 903 (1995).2  _____ ______  ____________________ 2. Adeeb, by contrast, did present such a picture. The Adeeb court explained:  _____ We are . . . persuaded by practical considerations that a discharge should not be denied in the present situation. It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. -17- 17 Contrary to the bankruptcy court's determination, therefore, denying Bajgar discharge actually comports with the "purpose" of the Bankruptcy Act. See Grogan v. Garner, 498 U.S 279, ___ ______ ______ 286-87 (1991) ("[I]n the same breath that we have invoked th[e] 'fresh start' policy, we have been careful to explain that the [Bankruptcy] Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'"); Citibank, N.A. v. Eashai (In re ______________ ______ _____ Eashai), 87 F.3d 1082, 1088 (9th Cir. 1996) ("This exception ______ to discharge furthers the policy that an honest but unfortunate debtor obtains a fresh start while a dishonest debtor does not benefit from his wrongdoing."); Mayer v. _____ Spanel Int'l Ltd., 51 F.3d 670, 674 (7th Cir.) ("Congress _________________ concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment."), cert. denied, 116 S. Ct. 563 (1995).3 _____ ______  ____________________ Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize his original transfer of property was a mistake. Adeeb, 787 F.2d at 1345. At oral argument in the instant _____ case, however, Bajgar's attorney informed us that Bajgar was well-counseled by an experienced bankruptcy lawyer throughout the period in question, including the time he executed the initial fraudulent transfer. 3. As for the Bankruptcy Code's objective of guaranteeing the equitable distribution of a petitioner's estate among his creditors, it is likely that our decision, by denying discharge, will facilitate this outcome by deterring petitioners from fraudulently transferring property within -18- 18 Conclusion Conclusion __________ Martin's claim "comes squarely within" Section 727(a)(2)(A)'s exception for property fraudulently transferred within one year of the filing of a bankruptcy petition. See Menna, 16 F.3d at 9. It is for Congress to ___ _____ determine whether or not this exception should be recast. We REVERSE and REMAND to the district court with instructions to remand to the bankruptcy court for proceedings consistent with this opinion.  ____________________ one year of filing a voluntary bankruptcy petition in the first place.  -19- 19