Gants, J.
On April 3, 1996, the defendant Commonwealth of Massachusetts (“Commonwealth”), through an Order of Taking, took an easement over a portion of the property owned by the plaintiff Stephen Burwick for the benefit of the defendant Berlin Properties Limited Partnership (“Berlin”), who owned an adjoining parcel of land. Burwick filed suit seeking a declaratory judgment under G.L.c. 231A and G.L.c. 79 that the taking of this easement over his property lacked sufficient public purpose and violated G.L.c. 81, §7A, the statute relied on by the Commonwealth and the defendant Massachusetts Highway Department (“MHD”) to authorize the taking. Burwick also seeks a declaratory judgment under G.L.c. 240, §§6-10 establishing that Burwick holds this property in fee simple, free from the easement in dispute or other rights claimed by the Commonwealth or Berlin. Finally, Burwick seeks a jury trial on the amount of compensation awarded to him by MHD in connection with the taking of two other easements whose legality is not in dispute and, in the event the taking of the third disputed easement was a valid exercise of the eminent domain power, Burwick seeks a jury trial as to the amount of compensation due to him for that taking as well. All parties have cross-moved for partial summary judgment as to the legality of the taking of this third easement.
*712 BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to the plaintiff and should not be misunderstood as findings of the court.
This dispute arose in connection with the development of the Solomon Pond Mall (“the Mall”) in Berlin and Marlborough, Massachusetts, near the intersection of Interstates 290 and 495. The Mall was built by Berlin and New England Development, Inc. (“New England Development”) on an 86.1 acre parcel of land owned by Berlin. New England Development and Berlin obtained final zoning approval to develop the Mall from the City of Marlborough in the fall of 1993, and from the Town of Berlin in March of 1994.
On or about July 28, 1993, Berlin entered into a Purchase and Sale Agreement with the Trustees of the 1979 Leavitt Trust u/d/t/ dated December 28, 1979 in which Berlin obtained a two-year option to purchase a separate 8.62 acre parcel of land in Marlborough and Northborough owned by the Leavitt Trust for $1 million (the “Leavitt Parcel”). Berlin exercised that option on December 19, 1994. The Leavitt Parcel is bounded by Interstate 290, Solomon Pond Road, and a parcel of land in Marlborough owned by Burwick (the “Burwick Parcel”) on which a Super 8 Motel is located. The only street access to the Leavitt Parcel was from Old River Road, a narrow road near the intersection of Solomon Pond Road and Donald Lynch Boulevard that led into Donald Lynch Boulevard. The Burwick Parcel had street access from both Donald Lynch Boulevard and Old River Road. Due to the proximity of the Mall to Interstates 290 and 495, both of which are limited-access state highways, Berlin needed to obtain certain permits from the Commonwealth, including a highway access permit, in addition to the approval of the local zoning authorities in Marlborough and Berlin. As part of the application process for the highway access permits, on or about September 30, 1994, Berlin submitted its Final Environmental Impact Report for the Mall (the “FEIR”) to the Executive Office of Environmental Affairs of the Commonwealth (“EOEA”). The FEIR proposed measures to mitigate traffic problems caused by the development of the Mall and the Marlborough Business Center, including a plan to tie Old River Road into the reconfigured intersection of Solomon Pond Road and Donald Lynch Boulevard. On November 17, 1994, Berlin filed a Notice of Project Change revising the traffic mitigation measures it proposed in the FEIR. Significantly, Berlin proposed to contribute a portion of the Leavitt Parcel to the Commonwealth in order for the MHD to construct a new exit ramp from Interstate 290 to Solomon Pond Road. Berlin did not alter its proposal to integrate Old River Road into the reconfigured intersection of Solomon Pond Road and Donald Lynch Boulevard.
In the late fall of 1994, MHD District 3 Highway Director Peter Donahue denied Berlin’s proposal to tie Old River Road into a new configuration of the intersection. In a Comment Letter, dated December 12, 1994, MHD explained its reasoning:
[W]e have informed the proponent that the proposed realignment of the Old River Road approach to the Donald J. Lynch Boulevard/River Road intersection will not be permitted due to the necessity of extending the existing No-Access line “around” this corner of the intersection. As part of these interchange improvements, the MHD will explore alternative means of access for those parcels that are affected by the extension of this No- Access line.
In other words, the MHD indicated that it planned to deny access to and from Old River Road, and would explore other means of access to those parcels whose sole means of access presently was via Old River Road.
On or about December 14, 1994, MHD and EOEA approved the plans for the Mall and asked Berlin to submit a draft environmental impact finding relating to the Mall pursuant to G.L.c. 30, §61 of the Massachusetts Environmental Policy Act (“MERA”). Five days later, Berlin exercised its rights under the option agreement and bought the Leavitt Parcel for $1 million.
On February 24, 1995, MHD issued its Section 61 Finding for the Mall, which it incorporated into MHD permits for this project. This Finding discussed the substantial redesign and reconstruction that would be done to address the increased traffic anticipated at the Interstate 290-Solomon Pond Road interchange. Among these changes were the addition of a traffic signal at the intersection of Solomon Pond Road and Donald Lynch Boulevard, and the elimination of access near that intersection, which meant blocking off Old River Road. The MHD recognized that, since it was blocking off Old River Road, it needed to provide an alternative means of access for those parcels whose only street access was via Old River Road. The MHD Findings declared:
The general concept of these interchange improvements, as shown on the plan referenced above, entails the extension of an existing “No-Access” restriction around the southeasterly layout line of the Solomon Pond Road/Donald J. Lynch Boulevard intersection and across the Donald J. Lynch Boulevard/Old River Road intersection. As part of these interchange improvements, the MHD will provide alternative means of access to Donald J. Lynch Boulevard for those parcels of land that are adversely affected by the extension of this “No-Access” restriction.
On February 15, 1995, having learned of the draft Section 61 Finding that would block all access to and *713 from Old River Road, Burwick wrote the MHD to complain, characterizing the proposal as creating “a potentially disastrous and unworkable situation.” He observed that large vehicles, buses, and trucks have always exited from his motel property via Old River Road and will not be able to exit easily or safely directly onto Donald Lynch Boulevard. MHD District Highway Director Donahue visited the Burwick parcel to examine Burwick’s concerns, and in a letter dated March 10, 1995 conceded that the proposed change “will make it more difficult for large vehicles to exit the site.” He rejected Burwick’s suggestion, which mirrored Berlin’s suggestion, to place a traffic light at the intersection of Old River Road and Donald Lynch Boulevard, “due to the significant operational and safety problems that were associated with it.” He proposed instead constructing a turn-around at the westerly end of the motel’s parking lot.
At the Design Public Hearing held by MHD on April 17, 1995 regarding the proposed highway alterations, Burwick appeared and objected to the proposed closing of Old River Road. After Burwick essentially repeated the arguments he had raised in his February 15 letter, an MHD official interrupted him and declared, “We understand your concerns. This is not finalized as of yet. These plans are all temporary.”
In the months that followed, Burwick, Berlin, and the MHD negotiated in an effort to reach a mutually satisfactory resolution of Burwick’s concerns about access to the Burwick parcel. Part of what Burwick sought in these negotiations was the transfer of a portion of the Leavitt parcel in fee simple from Berlin to Burwick, which Berlin was unwilling to accept. In the summer of 1995, negotiations ceased without any resolution being reached. Before the negotiations ended, MHD District Director Donahue told Burwick that, if Berlin and Burwick could not come to an agreement, he could and WOULD do whatever he wanted with Old River Road. Donahue said that he would either leave Old River Road as it was or close it down completely. Later, without informing Burwick, Donahue decided as an accommodation to Burwick to modify the no-access restriction to allow vehicles to exit the Burwick Parcel by way of Old River Road. Vehicles would still be barred from entering Old River Road. Donahue told Berlin’s Project Engineer about the change, and he revised the design plans that Berlin was preparing for MHD’s approval in connection with Berlin’s request that the MHD issue the Access Permit.
Under G.L.c. 81, §21, “Any person who builds or expands a business, residential, or other facility intending to utilize an existing access or a new access to a state highway so as to generate a substantial increase in or impact on traffic shall be required to obtain a permit under this section prior to constructing or using such access.” On September 6, 1995, the MHD issued the original Access Permit under §21, which specifically incorporated by reference the earlier Section 61 Findings. On November 3, 1995, the MHD issued an amendment to the Access Permit which extended the work that was permitted in accordance with a set of plans prepared by Berlin’s Project Engineer. These plans provided that a “Do Not Enter” sign was to be placed at the intersection of Old River Road and Donald Lynch Boulevard forbidding traffic from entering Old River Road and a one-way sign was to be placed reflecting that it was permissible to exit Old River Road out to the Boulevard. In addition, the plans provided for a concrete barrier to be placed on Old River Road where the Burwick Parcel borders the Leavitt Parcel, allowing cars to leave the motel parking lot via Old River Road to Donald Lynch Boulevard but barring even exiting vehicles on the Leavitt Parcel from reaching the Boulevard. Burwick was not shown either the original or the amended Access Permit.
Construction began in accordance with these plans in September 1995 and was completed around July 1996. At some point during the construction, the “Do Not Enter” and “One Way Street” signs were installed and access to Old River Road from Donald Lynch Boulevard was prohibited. Since Burwick had long used Old River Road only as a means for cars and trucks departing his motel parking lot to exit onto Donald Lynch Boulevard, his use of the road did not change as a result of this construction and these road signs. Berlin had earlier agreed with the MHD to give the Commonwealth a portion of the Leavitt parcel so that the MHD could build “sister off-ramps” at the Interstate 290-Solomon Pond Road interchange. On December 22, 1995, Berlin entered into a Zero Land Damage Agreement with the Commonwealth in which Berlin formally agreed to transfer that portion of the Leavitt Parcel to the Commonwealth at no charge. The Zero Land Damage Agreement expressly provided that:
It is also understood and agreed that the Commonwealth will provide access via a permanent right way easement to the remaining land east of River Road over land n/f Stephen D. Burwick to Donald J. Lynch Boulevard.
At the end of this sentence, the words “if required” were marked out by hand with a solid line.
On April 3, 1996, during construction, MHD issued an Order of Taking (Layout No. 7307) that took an easement over a 6,344 square foot swath of land on the Burwick Parcel between the Leavitt Parcel and Donald Lynch Boulevard. The initial draft of the Order of Taking was prepared by Berlin’s Project Engineer and reviewed and revised by the MHD Right of Way Bureau. The Project Engineer incorporated the MHD’s changes before returning it to the MHD for execution and recording. The Order of Taking declares:
An easement is hereby taken in a parcel of land shown on the plan hereinafter referred to as Parcel 21-R-l.
*714 However, the Order of Taking does not limit the right of access or egress to or from Old River Road. Rather it declares:
The right of access to and egress from the State highway is limited, being allowed across the location lines of the Section of highway altered and laid out as hereinbefore described, only as follows:
1. Free access to and egress from said location is allowed across the location line as hereinbefore described, between a point thereon . . . [description of Old River Road].
This easement was recorded in the Middlesex Registry of Deeds on or about April 18, 1996.
Since both access to and egress from the Leavitt Parcel were allowed on the face of the Order of Taking, Burwick brought this suit on November 21, 1996 contesting the validity of the easement taken by the Order of Taking. After this suit was brought, the MHD issued a revised Order of Taking (Layout No. 7472), dated February 4, 1998, that permitted egress from Old River Road but barred entry into that roadway. This revised Order made no specific reference to the taking of any easement and did not incorporate by reference the earlier Order.
DISCUSSION
G.L.c. 81, §7A provides in pertinent part:
The department may take or acquire by eminent domain under said chapter, easements in land outside the location of limited access state highways, said easements to be taken in behalf of those owners of land abutting said highways, whose rights of access to and egress from their land, and any other rights necessary to make the same available for use, will become inoperative due to the construction of said highway.
There is no dispute that the Leavitt Parcel abuts limited access state highways and that, if Berlin’s “rights of access to and egress from their land, and any other rights necessary to make the same available for use, will become inoperative due to the construction of said highway,” the Commonwealth was entitled to take by eminent domain an easement to restore access to the Leavitt Parcel. Nor is there any dispute that, under this statute, no easement maybe taken by eminent domain unless the property enjoying the benefit of this easement will be denied the right of access to and egress from that property as a result of highway construction. Unless the taking restores access to the property enjoying the benefit of the easement, the taking would both exceed the statutory grant of authority under G.L.c. 81, §7A and lack a sufficient public purpose. See generally Luke v. Massachusetts Turnpike Authority, 337 Mass. 304, 308-09 (1958). Burwick contends, however, that the April 3, 1996 Order of Taking specifically allowed free access to and egress from Old River Road, so that this statutory condition was not met, no public purpose was served, and, consequently, the taking of the easement was invalid as a matter of law.
“The meaning and scope of an instrument of taking, so far as it affects private rights in property, is a question of law.” The General Hospital Corp. v. Massachusetts Bay Transportation Authority, 423 Mass. 759, 764 (1996). Moreover, “(a]n order of taking in writing, duly recorded, in conformity with the statute authorizing the order of taking, is to be treated as if it were a statute.” Id. at 764 n.3. Consequently, this Court will examine the Order of Taking dated April 3, 1996 (Layout No. 7307) as if it were a statute.
“Ordinarily, if the language of the statute is plain and unambiguous it is conclusive as to legislative intent.” Sterilite Corp. v. Continental Casualty Co., 397 Mass. 837, 839 (1986). See also Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984); Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 415 (1984). “After all, ‘statutory language is the principal source of insight into legislative purpose.’ ” Sterilite Corp. v. Continental Casualty Co., 397 Mass. at 839 quoting Bronstein v. Prudential Ins. Co., 390 Mass. at 704. “However, time and again we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute’s purpose and history.” Sterilite, 397 Mass. at 389. “We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable.” Attorney General v. School Committee of Essex, 387 Mass. 326, 336 (1982). “Rather, when a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute.” Id. “We assume the Legislature intended to act reasonably.” Id. See also In re Bajgar, 104 F.3d 495, 497 (1stCir. 1997) (“Theplain meaning of legislation should be conclusive, except in the ‘rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.’ ” (citations omitted); Parisi By Cooney v. Chater, 69 F.3d 614, 617 (1st Cir. 1995) (“If the meaning of the text is clear, then that meaning must be given effect, unless it would produce an absurd result or one manifestly at odds with the statute’s intended effect”).
If one looked only to page 3 of the Order of Taking dated April 3, 1996 (Layout No. 7307) and focused on the paragraph that declared that “free access to and egress from [Old River Road] is allowed,” one would conclude from this plain language that the signatories of the Order of Taking intended to allow vehicles both to enter and exit Old River Road. However, this conclusion would be absurd given the entirety of the Order of Taking, the history leading up to it, and the circumstances surrounding it. See The General Hospital Corp. v. Massachusetts Bay Transportation Authority, 423 Mass. at 764 (“When deciding the scope of an easement taken by eminent domain, we must consider the language of the taking order and the circumstances surrounding the taking”).
*715 The Order of Taking itself, on page 2, declared that the easement was being taken under G.L.c. 81, §7A “on behalf of an owner of land whose rights of access thereto and egress therefrom would otherwise become inoperative due to limited access provisions of the State highway alteration hereinafter described.” If the MHD did not intend to limit the right of access to or egress from Old River Road, then it is plain that the right of access to and egress from the Leavitt Parcel would not have “become inoperative” and there would be no need to create the easement over the Burwick Parcel. Therefore, the Order itself is internally inconsistent. Even more persuasively, at the time the Order of Taking was signed, the Access Permit, which also had the force of law, provided that Old River Road would be one-way, with entry from Donald Lynch Boulevard prohibited, and that a concrete barrier would bar all access onto the Leavitt Parcel. Indeed, by April 1996, the concrete barrier, "One-Way” sign, and “Do Not Enter” sign may already have been put up on Old River Road. If not, they certainly were shortly thereafter. It would be plainly absurd for the MHD to have intended unrestricted access to Old River Road and, at the same time, to have implemented restricted access.
In view of the internal contradiction within the Order of Taking, the history leading up to it, and the provisions of the Access Permit, this Court will not interpret the otherwise plain language on page 3 of the Order of Taking to order that access to and egress from Old River Road be unrestricted. Nor, in view of that plain language, will it interpret this Order of Taking as having transformed Old River Road into a one-way road. Although it is plain that that is what the MHD intended it to say, that is not what the Order of Taking says. Although a statute (or an Order of Taking) may not always mean what it says, it certainly cannot mean the opposite of what it says. The better course is simply to find that the Order of Taking, in view of its internal inconsistency, is silent as to what it intended with respect to Old River Road.
Does this silence render the Order of Taking itself invalid? This Court finds that it does not. G.L.c. 81, §7A authorizes the MHD to take an easement in eminent domain “in behalf of those owners of land abutting said highways, whose rights of access to and egress from their land, and any other rights necessary to make the same available for use, will become inoperative due to the construction of said highway.” Prior to the April 3, 1996 Order of Taking, as a result of the November 3, 1995 amendment to the Access Permit, the right of access to and egress from the Leavitt Parcel had “become inoperative” due to the changes being made to the Interstate 290 - Solomon Pond Road interchange. Old River Road, according to that Access Permit amendment, was to become one-way, with no entry from Donald Lynch Boulevard and with a concrete barrier barring all access from the Leavitt Parcel. As a result, for all practical purposes, Berlin had no access to or egress from the Leavitt Parcel; no vehicle could enter Old River Road and, even if it did, it could not reach the Leavitt Parcel because of the concrete barrier at the border with the Burwick Parcel. These restrictions were enforceable in law by a fine or civil penalty of up to $1,000 per day for each violation. G.L.c. 81, §21. The Access Permit amendment concerning Old River Road was not revised after the Order of Taking and this Court will not read the Order of Taking, given its internal contradictions, as effecting a revision. Nor did the practical circumstances of Old River Road change after the Order of Taking; it was a one-way street before the Order and remained so after the Order. Consequently, the Order of Taking, to the extent it created an easement in favor of the Leavitt Parcel over the Burwick Parcel, was a valid taking of this easement under G.L.c. 81, §7Abecause it restored access to and egress from a property that, without such an easement, had no access or egress.
Nor can there be any doubt that the taking of the easement was for a sufficient public purpose. See Caleb Pierce, Inc. v. Commonwealth, 354 Mass. 306, 309 (1968) (question of whether the taking of land in eminent domain was for a public purpose is a judicial question). The MHD reasonably made changes to the Interstate 290-Solomon Pond Road interchange to handle the increase in traffic it anticipated from the Mall and the Marlborough Business Center and reasonably limited access to Old River Road in order to preserve the traffic flow and protect drivers’ safety, since Old River Road is quite close to the Solomon Pond Road-Donald Lynch Boulevard intersection, where a traffic signal was being added.[1] Having reasonably decided that Old River Road needed to be closed to incoming traffic, it acted reasonably in taking an easement over the Burwick Parcel so that the Leavitt Parcel would not be denied all access to public streets.
This Court has considered and rejected Burwick’s contentions that the easement was taken solely for the private purpose of increasing the value of the Leavitt Parcel. Berlin had wanted Old River Road to be merged into a reconfiguration of the Solomon Pond Road and Donald Lynch Boulevard intersection, and this plan was rejected by the MHD. The MHD initially planned to cut off Old River Road completely and agreed to make it one-way solely to accommodate Burwick’s concerns; the change did Berlin no good since the Leavitt Parcel still had no access to any public street. While the plaintiff attempts to conjure some sinister plan whereby the MHD would arrange for Berlin to preserve access via Old River Road and obtain even better access via the easement, ostensibly in return for Berlin’s donation of part of the Leavitt Parcel for the “sister off-ramps,” this is not what happened. With the November 3, 1995 amendment to the Access Permit, the MHD cut off the Leavitt Parcel’s access to Old *716 River Road and never restored that access even after the April 3, 1996 Order of Taking.
Finally, even if there were any question as to the validity of the April 3, 1996 Order of Taking, that question evaporated after the February 4, 1998 Order of Taking plainly limited Old River Road to one-way traffic. While the November 3, 1995 amendment to the Access Permit already made Old River Road a one-way street as a matter of law, this Order of Taking confirmed that status and eliminated any argument that the language of the earlier Order of Taking had somehow revised or revoked that provision of the Access Permit. Thus, while I find that the Order of Taking was effective as of April 3, 1996 for the reasons stated above, there can be no doubt that it would be effective as of February 4, 1998 even if the earlier Order had not been valid.
ORDER
For the reasons stated above, the defendants’ motion for partial summary judgment is ALLOWED and the plaintiffs motion for partial summary judgment is DENIED.

 It also acted reasonably and responsibly in examining Burwick’s concerns about the closing of Old River Road and accommodating those concerns by allowing one-way traffic so that larger vehicles from the Burwick motel parking lot can exit onto Old River Road and out to Donald Lynch Boulevard.