**In re Paula M. RINGHAM, Debtor.**

**No. 02–18279–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

June 12, 2003.

Gary W. Cruickshank, Boston, MA, for Debtor.

Mark G. DeGiacomo, Olga L. Bogdanov, Murtha Cullina, LLP, Boston, MA, Chapter 7 Trustee.

Joseph H. Baldiga, Christine E. Devine, Mirick, O'Connell, DeMallie & Lougee, LLP, Worcester, MA, for Simon C. Ringham.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

## I. INTRODUCTION

The matters before the Court are the Chapter 7 Trustee's Objection to Debtor's Claim of Exemption in her residence, as well as the Objection filed by Simon C. Ringham ("Ringham"), the Debtor's former spouse, to her homestead exemption claim. The Objections were filed on February 3, 2003 and February 6, 2003, respectively. The Debtor filed Responses to both Objections.

The Court heard the Objections and the Debtor's Responses on May 20, 2003 and took the matters under advisement. The issue presented by both Objections is whether, for purposes of triggering the prohibition against exempting voluntarily transferred property under 11 U.S.C. § 522(g)(2), the Trustee must first avoid the second mortgage granted by the Debt-

or to her mother, Phyllis A. Leonard ("Leonard") approximately six weeks before she filed a voluntary petition under Chapter 7. Leonard discharged the mortgage on February 19, 2003, one week before the Chapter 7 Trustee filed an adversary proceeding against her seeking to avoid the mortgage under 11 U.S.C. § 547(b) and to preserve the mortgage lien for the benefit of the estate. Were the Court to rule in favor of the Debtor, she would be in a position to exempt substantial equity in her home (approximately $160,000 using the value ascribed to the property by the Debtor on Schedule A) pursuant to Mass. Gen. Laws ch. 188, § 1 and the Debtor's estate would likely have no assets. If the Trustee and Ringham were to prevail with respect to their Objections, however, the mortgage lien of approximately $180,000 would be preserved for the benefit of the estate, and the Debtor's unsecured creditors, including Ringham, who holds a claim in the sum of $115,000, likely would receive a substantial dividend.

## II. BACKGROUND [1]

The Debtor filed a voluntary petition on November 14, 2002. On Schedule A–Real Property, she listed an ownership interest in a residence located at 20 Crest Avenue, Melrose, Massachusetts, which she valued at $421,000. The Debtor disclosed on Schedule C–Property Claimed As Exempt and D–Creditors Holding Secured Claims, respectively, that she is claiming the Massachusetts homestead exemption and that the property was subject to two mortgages at the time of the filing of the petition: a first mortgage to Bank of America in the amount of $262,669 and a second mortgage to Leonard in the amount of $180,000. On Schedule F–Creditors Holding Unsecured Nonpriority Claims, the Debtor listed her former spouse as the holder of a claim in the sum of $115,000. Additionally, she listed a law firm as the holder of claim in the same amount, which claim, according to Ringham belongs to his divorce attorney and is duplicative of his claim. According to Ringham, his claim comprises approximately 87% of the total claims.[2] To date, neither the Debtor nor the Chapter 7 Trustee has objected to Ringham's proof of claim.

In her response to the Objections to her exemption, the Debtor admitted that prior to filing the petition she obtained a substantial amount of money from Leonard in conjunction with her divorce from Ringham. She also admitted that she borrowed $263,000 from Bank of America and executed a mortgage in its favor on September 25, 2002. From the proceeds, she transferred $88,500 to Leonard in partial repayment of loans Leonard made to her.[3] Additionally on October 1, 2002, the Debtor executed and delivered to Leonard a note and a second mortgage in the sum of $180,000 in further repayment of loans from Leonard, whom the Trustee described as an "insider" of the Debtor as that term is defined at 11 U.S.C. § 101(31).

---

1. At the hearing held on May 20, 2003, the parties represented that the material facts necessary to decide the issue before the Court were not in dispute. Although pertinent facts are not in dispute, the parties do not characterize all the transactions and the Debtor's intentions in the same fashion. Neither party, however, requested an evidentiary hearing.

2. Although the Debtor originally listed Leonard as the holder of a nonpriority, unsecured claim in the sum of $1,700, she amended Schedule F, listing Leonard as the holder of an additional claim in the sum of $220,000. Leonard filed a proof of claim in that amount on April 15, 2003.

3. The Trustee characterizes Leonard's loan as an "Alleged Loan."

The Trustee and Ringham averred in their Objections that the payment of monies to Leonard from Bank of America and the granting of a second mortgage to her were preferential transfers made by the Debtor which the Trustee could recover pursuant to 11 U.S.C. §§ 547 and 550. The Trustee represented that he would be filing a preference action against Leonard to avoid her mortgage and recover any amounts paid to her. Trustee's Objection at ¶ 15.

On February 19, 2003, shortly after the Trustee and Ringham objected to the Debtor's claim of exemption in the Melrose property, Leonard recorded a discharge of her second mortgage. One week later, the Trustee filed a four count complaint against Leonard as follows: Count I: Avoidance of the Leonard Mortgage pursuant to § 547; Count II: Avoidance of Payment of Proceeds from BOA [Bank of America] Note pursuant to § 547; Count III: Avoidance of the Leonard Mortgage pursuant to § 548; and Count IV: Avoidance of the Payment of Proceeds from the BOA Note pursuant to § 548. Leonard filed an Answer to the Complaint, to which she attached a copy of the discharge of the second mortgage, seeking dismissal of the adversary proceeding.

## III. DISCUSSION

### A. *Applicable Law*

■ Section 522(g) of the Bankruptcy Code provides in relevant part the following:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee *recovers* under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred if—

> (1)(A) such transfer *was not a voluntary transfer* of such property by the debtor; and

> (B) the debtor did not conceal such property . . . .

11 U.S.C. § 522(g). The purpose of § 522(g) is "to allow an exemption 'where a property interest has been *involuntarily* taken from a debtor by means such as an execution, repossession or certification of judgment, [because] it would be inequitable not to permit a debtor to assert an otherwise allowable exemption....' " *Glass v. Hitt (In re Glass)*, 60 F.3d 565, 569 (9th Cir.1995)(emphasis in original, citations omitted).

The Trustee and Ringham rely upon the decision of the United States Court of Appeals for the Ninth Circuit in *Glass* in support of their Objections. In the *Glass* case, the debtor failed to properly disclose property that he had transferred to his son prior to filing a bankruptcy petition. At the § 341(a) meeting of creditors, the Chapter 7 trustee, who had learned about the transfer from one of the debtor's creditors, instructed the debtor to amend his bankruptcy schedules to reflect any interest he might have or assert in the transferred property. *Id.* at 566. The trustee then filed a formal objection to the debtor's claim of a homestead exemption in which he stated that he intended to seek an avoidance of the transfer under 11 U.S.C. § 548 and " '[a]lternatively, in the event the debtor has since reconveyed [sic]this property, the trustee asserts that such reconveyance is an attempt to recapture the debtor's homestead exemption, which has been forfeited pursuant to 11 U.S.C. § 522(g) by the debtor's voluntary transfer of this property and his prior concealment ...' " *Id.* Three days after the trustee filed his objection, the debtor's son conveyed the property to the debtor

and the debtor amended his schedules to claim a homestead in the property conveyed. *Id.*

The United States Court of Appeals for the Ninth Circuit affirmed the decision of the Bankruptcy Appellate Panel for the Ninth Circuit in reversing the bankruptcy court's decision to overrule the trustee's objection. The bankruptcy court had held that the debtor was entitled to his homestead exemption under 11 U.S.C. § 522(b) because the trustee had not taken any action against the debtor's son to "achieve reconveyance" of the residence and thus had not recovered the property. *Id.* at 567. The appellate panel, however, determined that it was unnecessary for the trustee " 'to commence a formal adversary proceeding or obtain a final judgment to prevail on an objection to a debtor's claim of exemption pursuant to § 522(g)(1).' " *Id.* (quoting *Hitt v. Glass (In re Glass),* 164 B.R. 759, 764–65 (9th Cir. BAP 1994)).

In rejecting the bankruptcy court's interpretation of the word "recovers" in § 522(g)(1), the circuit court approved the analysis of the appellate panel which reasoned that " 'it is not apparent from the word 'recovers' that a formal adversary proceeding against the transferee is needed for a court to deny a debtor's claim of exemption.' " *Id.* at 568 (quoting 164 B.R. at 763), as well as its determination not to "frustrate the purposes of § 522(g) … [and] … the foundation upon which the Code is based by a technical reading of the work 'recover' " *Id.* Citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the circuit court concluded that the appellate panel's analysis of the statutory language was more compelling than that of the bankruptcy court. Although it did not reach the question of whether the exemption would survive if the debtor had disclosed the transfer of property in his

schedules and statement of financial affairs, *id.* at 569 n. 5, the court relied upon *Hunter v. Snyder (In re Snyder),* 108 B.R. 150 (Bankr.N.D.Ohio 1989), in rejecting what it labeled the " 'liberal construction rule.' " *Glass* 60 F.3d at 570. Emphasizing the fundamental purpose of bankruptcy law to treat all creditors fairly, the Ninth Circuit stated that " 'the debtor is under a duty to do equity before he can claim his right to exemptions.' " *Id.* (citing *In re Dorricott,* 5 B.R. 192, 196 (Bankr. N.D.Ohio 1980)).

*In re Snyder,* the case relied upon by the Ninth Circuit in *Glass,* is instructive for purposes of resolving the parties' dispute in this case. In *Snyder,* the debtors, a husband and wife, granted a second mortgage on property which they claimed as exempt to the husband's parents approximately ninety days prior to filing a bankruptcy petition. The trustee filed an adversary proceeding against the parents who then released and canceled their second mortgage. For purposes of its decision, the bankruptcy court assumed that the parents reconveyed the property in response to the preference portion of the trustee's complaint, rather than the portion in which he alleged the transfer was a fraudulent conveyance. *Snyder,* 108 B.R. at 151.

In the *Snyder* case, the trustee did not contest the debtors' right to exempt any equity over and above the second mortgage interest which they conveyed. *Id.* at 152. Additionally, the trustee did not allege that the debtors concealed the transfer of the mortgage interest, and his affidavit established that the transfer to the husband's parents was voluntary as it was either given either to secure antecedent debt or to obtain a forbearance from foreclosure. *Id.* at 152–53. The debtors in *Snyder* argued that because the second mortgage was released, there was no re-

covery by the trustee for purposes of § 522(g) and § 551 was thus inapplicable. *Id.* at 153. The court rejected the debtors' position, stating the following:

> Under § 522(g), courts have determined debtors' rights to exempt property prior to any determination of the underlying avoidance issue. Other courts have applied § 522(g) when the Trustee's Complaint for avoidance of a transfer has been settled, rather than adjudicated. It follows from these cases that a judicial determination is not required to trigger § 522(g)'s prohibition against the exemption of voluntarily transferred property....
>
> \* \* \* \* \* \*
>
> When property is reconveyed after the Trustee has filed a Complaint to avoid the transfer, the property has been effectively recovered by the Trustee under the listed avoiding powers.... One cannot attempt to place property beyond the reach of creditors in an attempt to prevent an equitable distribution of assets under the Bankruptcy Code, reconvey the property in the face of a trustee's Complaint, and then exempt the equity in the property when it is recovered. Such an interpretation is not required, or warranted.
>
> \* \* \* \* \* \*

This does not mean that equitable considerations can never be a factor in allowing a debtor to exercise an exemption in property which has been previously voluntarily conveyed. This Court does not subscribe to the ... position that all that is required to prevent exemption is the initial voluntary conveyance of the property. *The language of § 522(g) requires that the trustee, or a creditor acting in a similar capacity, have taken some action which has resulted in the recovery of the property.*

> \* \* \* \* \* \*
>
> There appears to be some room for equity allowing an exemption if the property is reconveyed earlier in the process, before the Trustee has been forced to expend a significant amount of effort in recovering the property....

*Id.* at 153–54 (citations omitted, emphasis supplied).[4]

### B. *Analysis*

This case presents issues of first impression in this district, namely whether the interpretation § 522(g)'s language, "property that the trustee recovers," requires an actual recovery by the trustee; or whether such an interpretation would produce a result demonstrably at odds with the intentions of the drafters, *see Martin v. Bajgar (In re Bajgar),* 104 F.3d 495, 497 (1st Cir.1997) (quoting *Ron Pair,* 489 U.S.

---

4. The court in *Snyder* cited *In re Riggsby,* 34 B.R. 440 (Bankr.E.D.Tenn.1983), as an example of case where equitable considerations were important with respect to the "concealment" portion of § 522(g). In that case, the court allowed the debtors to exempt property which had been *involuntarily* transferred, but which they had not listed on their schedules because the debtors disclosed the existence of the property at the first meeting of creditors. *Snyder* 108 B.R. at 154 (citing *Riggsby,* 34 B.R. at 441).

The court also discussed in *In re Carpenter,* 56 B.R. 704 (Bankr.D.R.I.1986), a case in which the debtor argued that § 522(g) was inapplicable to property recovered by a creditor in state court under the Rhode Island fraudulent conveyance statute prior to the filing of the debtor's bankruptcy petition. The debtor argued that because the trustee did not recover the property, § 551 and § 522(g) did not defeat his right to exempt the property. According to the court in *Snyder,* Judge Votolato was extremely critical of this technical reading of the statutes, stating that it gave new meaning to the overused term " 'form over substance' " *Id.* (citing *Carpenter,* 56 B.R. at 707).

at 242, 109 S.Ct. 1026), where the trustee has indicated an intention to take action to recover, but has not actually recovered, property under 11 U.S.C. §§ 550, 551. Resolution of the issues is made more difficult as two sacrosanct principles of the Bankruptcy Code appear in conflict, namely the "fresh start," epitomized by the liberal construction of the Bankruptcy Code's exemption scheme, *see In re Dipalma*, 24 B.R. 385, 390 (Bankr.D.Mass.1982), and fair treatment of creditors. *See Glass*, 60 F.3d at 570. It also pits the Debtor and her mother against her former spouse and her other unsecured creditors, as Ringham holds a substantial portion of the unsecured debt in the case, assuming his representation that the claim of Abbe L. Ross, Esq., which the Debtor listed in the sum of $115,000, is duplicative of his claim.

▮ In this case, as in the *Snyder* case, the Debtor granted her parent a second mortgage on property she claimed as exempt. Had the Chapter 7 Trustee failed to challenge the second mortgage, the Debtor's mother's claim against the estate in the amount of approximately $180,000 would have been secured by a second mortgage on the Debtor's Melrose property. When the Trustee represented that he intended to challenge the second mortgage as a preferential or fraudulent transfer, Leonard discharged the mortgage. The Debtor then maintained that she then was entitled to exempt all the equity in the property after consideration of the Bank of America mortgage. Thus, under the tests articulated by the courts in *Glass* and *Snyder*, the Trustee in this case took action sufficient to constitute a "recovery" for purposes of § 522(g).

At the May 20, 2003 hearing, the Debtor distinguished *Glass* on grounds that the

circuit court's decision was driven by the debtor's initial concealment of property. In *Snyder*, however, there was no concealment of the second mortgage. Indeed, the facts of the instant case are virtually indistinguishable from those present in *Snyder*. Although in *Snyder*, the trustee commenced an adversary proceeding, the parents of the debtor/husband in that case discharged their mortgage prior to trial or a determination of the merits of the trustee's complaint. In the present case, the Trustee plainly indicated his intention to seek avoidance of Leonard's second mortgage and the recovery of any monies paid to her by the Debtor. Indeed, he filed an adversary proceeding just one week after Leonard discharged the mortgage.

The Court finds that the interpretation of § 522(g) advocated by the Debtor would produce a result "demonstrably at odds with the intentions of the drafters." *Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026; *Bajgar*, 104 F.3d at 497. There is no doubt that the Debtor voluntarily granted her mother a second mortgage within the preference period which, if left unchallenged, would have resulted in a "no asset" case.[5] Within approximately two weeks of the filing of the Objections, however, Leonard discharged the mortgage, producing equity in the approximate amount of $158,000 in the Melrose property for the benefit of her daughter, using Debtor's valuation of the property on Schedule A. But for the Objections to the Debtor's homestead, that equity, would not have been available either to the Debtor for purposes of her homestead exemption or for the estate for the benefit of the creditors. The Court shall not reward the Debtor's apparent shoddy pre-bankruptcy

---

**5.** The Debtor at no point suggested that the granting of the second mortgage was involun-    tary.

planning [6] by sanctioning Leonard's post-petition discharge of the second mortgage in response to the Trustee's stated intention of filing an adversary proceeding to avoid the mortgage and recover property for the estate.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order sustaining the Objections to the Debtor's homestead exemption filed by the Trustee and Ringham.

## ORDER

In accordance with the Memorandum dated June 12, 2003, the Court hereby sustains the Chapter 7 Trustee's Objection to Debtor's Claim of Exemption and the Objection of Simon C. Ringham to Claim of Homestead Exemption.

---

6. For example, if the Debtor had not granted her mother a second mortgage on the property within the applicable preference period and claimed the Massachusetts homestead exemption, she would have been in a position to obtain the benefit of the homestead, discharge her unsecured debt, and voluntarily repay her mother post-bankruptcy. *See* 11 U.S.C. § 524(f).