David HILL, Debtor.

Stornawaye Financial Corporation, Plaintiff–Appellee,

v.

David Hill, Defendant–Appellant.

BAP Nos. MB 07–041, MW 07–042. Bankruptcy No. 05–12703–WCH. Adversary No. 05–01622.

United States Bankruptcy Appellate Panel of the First Circuit.

May 7, 2008.

---

Isaac H. Peres, Boston, MA, on brief for Appellant.

Michael B. Feinman, Andover, MA, and Stephen P. Shannon, Andover, MA, on brief for Appellee.

Before LAMOUTTE, HAINES, and DEASY, U.S. Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

The debtor, David D. Hill ("Hill" or "Mr. Hill"), appeals two orders of the United States Bankruptcy Court for the District of Massachusetts dated May 4, 2007; one denying his discharge, and the other sustaining the objection of creditor Stornawaye Financial Corporation ("Stornawaye") to his claim of a homestead exemption. The issues before the Panel are the following:

1. whether the bankruptcy court erred in sustaining an objection to a claimed exemption under 11 U.S.C. § 522(g), based on the reconveyance of Hill's residence to Hill and his wife prior to the bankruptcy filing, upon the filing of a complaint by a creditor, where the statute by its terms precludes a homestead only where the debtor's property has been recovered by a "trustee";

2. whether the bankruptcy court erred in ruling that Hill's homestead exemption should be capped at $125,000 pursuant to 11 U.S.C. § 522(p), an amendment introduced under The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Public Law 109–8, 119 Stat. 23, where Hill's petition was filed before the amendment became effective on April 20, 2005;

3. whether the bankruptcy court erred in denying Hill's discharge under 11 U.S.C. § 727(a)(2)(A) and (B), where an asset was omitted from Schedule B but was disclosed in the Statement of Financial Affairs from the outset;

4. whether the bankruptcy court erred in denying Hill's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) based on the transfer of his residence to his wife, where the property was reconveyed to himself and his wife prior to the bankruptcy;

5. whether the bankruptcy court erred in denying Hill's discharge based on a "false oath" under 11 U.S.C. § 727(a)(4)(A), where the asset was not disclosed on Schedule B but was included in the Statement of Financial Affairs from the outset.

For the reasons set forth below, the Panel reverses the order sustaining the objection to Hill's claimed homestead exemption and affirms the order denying Hill's discharge.

### *Procedural Background*

On April 4, 2005, Hill filed a Chapter 7 bankruptcy petition before the United States Bankruptcy Court for the District of Massachusetts, Case No. 05–12703. On June 6, 2005, creditor Stornawaye filed an objection to Hill's claimed exemptions, including the homestead exemption over the marital home located at 11 River Meadow Drive, West Newbury, Massachusetts (the "West Newbury property").

On December 1, 2005, Stornawaye filed a multi-count complaint objecting to the granting of a discharge to Hill, Adversary Proceeding No. 05–1622. On January 25, 2006 the bankruptcy court ordered that Stornawaye's objection to Hill's claim of exemptions be consolidated for trial with the objection to discharge, as both were based on the same chain of events. On November 15, 2006, a trial was conducted on both the objection to the claimed exemptions and the objection to discharge. The two day trial continued on December 20, 2006, and on May 4, 2007 the court announced its findings and decision in open court. On that same day a short written order sustaining Stornawaye's objection to Hill's claim of a homestead exemption for the reasons set forth on the record was entered in the main case. Also, on May 4, 2007, the court entered judgment in the adversary proceeding in favor of Hill on the following Counts: Count I–11 U.S.C. § 523(a)(2)(B), Count II–11 U.S.C. § 523(a)(2)(B), Count III–11 U.S.C. § 523(a)(2)(B), Count IV–11 U.S.C. § 523(a)(6), Count VII–11 U.S.C. § 727(a)(4)(D), Count VIII–11 U.S.C. § 727(a)(2)(A), Count IX–11 U.S.C. § 727(a)(5), and Count X–11 U.S.C. § 727(a)(4)(D). The discharge was denied under Count V–11 U.S.C. § 727(a)(2)(A), Count VI–11 U.S.C. § 727(a)(4)(A), and Count XI–11 U.S.C. § 727(a)(2)(A) and (B). In the decision read on the record, the bankruptcy court first addressed the objection to discharge, discussing each Count of the complaint separately.

*Count V* of the complaint provides that the transfers of the property between Hill and his wife, and the separate declarations of homesteads thereafter, constitute a transfer or concealment of property of the estate within one year prior to the filing of Hill's bankruptcy petition with the intent to hinder, delay or defraud a creditor of the estate pursuant to 11 U.S.C. § 727(a)(2)(A). The court, after analyzing the evidence presented, particularly the testimony of Mrs. Hill regarding the reasons for refinancing and transferring her Massachusetts residence, found intent to defraud. In its order the bankruptcy court stated as follows: "[a]lthough the testimony of Mrs. Hill and her friends was not totally incredible", testing the facts and circumstances against the badges of fraud enumerated by the First Circuit in

the *Sugarman*[1] case, this Court must find intent to defraud, particularly when one examines the "objective indicia" set forth in *Marrama*.[2] The court found for the Plaintiff under Count V and denied discharge under § 727(a)(2)(A).

*Count VI* of the complaint provides that Hill's false statement made within his bankruptcy schedules constitutes a false account, knowingly and fraudulently made in connection with this case pursuant to 11 U.S.C. § 727(a)(4)(A). The court analyzed the facts surrounding the disclosure of the 2003 tax refund and found that Hill made a "false oath" by omitting the 2003 tax refund from Schedule B and that he knowingly and fraudulently, with reckless disregard, incurred in such omission. The court found for Stornawaye under Count VI and denied discharge under § 727(a)(4)(A).

*Count XI* of the complaint provides that Hill's failure to disclose on his bankruptcy Schedules and turn over to the Trustee the proceeds of the 2003 and 2004 federal income tax refunds constitutes a transfer of property of the debtor within one (1) year before the date of the bankruptcy filing, or property of the estate, after the date of the bankruptcy petition, with the intent to hinder, delay or defraud a creditor pursuant to 11 U.S.C. § 727(a)(2)(A) and (B). The court found that Hill had the required fraudulent intent when considering that his wife prepared a deposit slip for $11,063 (the joint 2003 tax refund) only two days before the bankruptcy petition, depositing the funds into her account on April 4, 2005, only an hour or two after the petition was filed; that Hill gave intentionally misleading information in his Schedules and Statement of Financial Affairs; and that the couple transferred joint assets to Mrs. Hill. For those reasons the court found for Stornawaye in Count XI and denied discharge under § 727(a)(2)(A) and (B). As to the 2004 tax refund the court found that "[t]here was no hiding of assets. Everything was fully disclosed."

The court then turned to Stornawaye's motion objecting to Hill's homestead exemption. First, the court determined that Hill's homestead exemption was capped at $125,000 because his Massachusetts residence was acquired within the 1,215–day period provided for in § 522(p). Then, the court concluded that Hill was not entitled to any amount of the homestead exemption under § 522(g) based on the cases of *In re Ringham*, 294 B.R. 204 (Bankr.D.Mass. 2003), and *In re Carpenter*, 56 B.R. 704 (Bankr.D.R.I.1986), which provide that § 522(g) is not limited to a recovery by the trustee, and that the recovery need not occur after the bankruptcy was filed.

This appeal ensued.

---

1. *Max Sugarman Funeral Home v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir.1991) ("Among the more common circumstantial indicia of fraudulent intent *at the time of the transfer* are: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, *after the transfer*, (5) retention by the debtor of the property involved in the putative transfer.")

2. *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 445 F.3d 518, 522 (1st Cir.2006) ("In weighing evidence of fraudulent intent courts should look to the following 'objective indicia:' (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.")

### *Factual Background*

The following relevant facts are not in dispute. On August 10, 2000, Summit Bank granted financing to U.S. Radon Systems, Inc. ("Radon"), in the amount of $250,000. On that same date Hill executed a personal guaranty of the indebtedness of his former company, Radon, to Summit Bank, which later merged with Fleet National Bank. Radon later applied for and obtained further financing from Summit Bank. Eventually, Fleet National Bank sold Radon's loan obligation, guaranteed by Hill, to Stornawaye.

On May 7, 2004, Hill and his wife, Mrs. Tina R. Hill, sold their Connecticut home and purchased the West Newbury property, as tenants by the entirety, for the purchase price of $1,000,000. The deed was recorded on May 11, 2004. Mr. and Mrs. Hill received net proceeds in the amount of $567,000 from the sale of their Connecticut home, of which $559,000 were utilized to purchase the West Newbury property, in addition to obtaining a mortgage in the amount of $450,000.

On August 26, 2004, Mr. and Mrs. Hill, as tenants by the entirety, transferred the West Newbury property to Mrs. Hill for the sum of $1.00. On August 31, 2004, Mrs. Hill recorded a Declaration of Homestead with the Registry of Deeds on the West Newbury property. No prior homestead had been recorded as to the West Newbury property by Hill or his wife. On August 31, 2004, Hill and his wife refinanced their West Newbury property, obtaining a $460,000 mortgage allegedly to obtain a better interest rate. The interest rate was changed from 5.375% to 5.125%, thereby reducing the monthly payment by only $14.00 per month; thus, it would take 14 years to amortize the $6,000 in closing costs.

On January 18, 2005, Stornawaye commenced suit against Mr. and Mrs. Hill, before the Essex County Superior Court, Commonwealth of Massachusetts, for the collection of $463,249.71, and alleging the fraudulent conveyance of the West Newbury property. On January 31, 2005, hand service of the complaint and request for a real estate attachment was made upon Mrs. Hill. She notified her husband of the complaint on that day. In response to the lawsuit and upon the advise of counsel, Mrs. Hill caused the West Newbury property to be retransferred to her and Hill, as tenants by the entirety, by deed dated February 2, 2005 and recorded on February 3, 2005. Hill declared and recorded a homestead as to the West Newbury property also on February 3, 2005. The homestead declaration was executed on February 2, 2005, at the same office as was the deed retransferring the West Newbury property to Mr. and Mrs. Hill.

On April 4, 2005, Hill filed his Chapter 7 bankruptcy petition. In the Statement of Financial Affairs filed on May 6, 2005, Hill included a 2003 Federal tax refund in the amount of $10,000. The 2003 refund check was actually in the amount of $11,063 and was deposited into Mrs. Hill's bank account on April 4, 2005, the same day the bankruptcy petition was filed. The 2003 Federal tax refund was not included in Schedule B of Hill's bankruptcy case. Hill listed in Schedule B an expected 2004 Federal tax refund estimated at $16,000. The 2004 Federal tax refund was also deposited into Mrs. Hill's bank account.

In September, 2005, Hill amended Schedule B to include the exact amount of the 2004 Federal tax refund and amended the Statement of Financial Affairs to include the exact amount of the 2003 Federal tax refund. In December, 2005, Hill, again, amended the Statement of Financial Affairs to include a paragraph explaining what happened to the 2003 Federal tax refund. Schedule B was never amended to include the 2003 Federal tax refund.

In or about October, 2005, the Chapter 7 Trustee received about $5,000 of the 2003 Federal tax refund.

### Appellate Jurisdiction

■ The Panel must determine that it has jurisdiction, before considering the merits of a dispute, even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has authority to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

■■ An order granting or denying a claimed exemption is a final, appealable order. *Fiffy v. Nickless (In re Fiffy)*, 293 B.R. 550, 553 (1st Cir. BAP 2003); *Howe v. Richardson (In re Howe)*, 232 B.R. 534, 535 (1st Cir. BAP 1999), *aff'd*, 193 F.3d 60 (1st Cir.1999). The final judgment entered denying Hill's discharge, is likewise, a final appealable order. *In re Rowlands*, 346 B.R. 279, 281–82 (1st Cir. BAP 2006); *In re Bank of New England*, 218 B.R. at 645.

### Standard of Review

■ The Panel reviews rulings of law *de novo* and findings of fact for clear error. *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–108 (1st Cir.1997); *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). If the trial court's account of the evidence is plausible, in light of the record viewed in its entirety, a reviewing court may not reverse, even if convinced that if it had been sitting as a trier of fact, it would have weighed the evidence differently. *Gonzalez–Ruiz v. Doral Fin. Corp.*, 341 B.R. 371 (1st Cir. BAP 2006) (citations omitted).

■ There are no disputed facts involved in the bankruptcy court's decision to sustain Stornawaye's objection to Hill's claimed homestead exemption pursuant to 11 U.S.C. § 522(g); therefore our review of said order is *de novo*, as it only involves questions of statutory construction. Regarding the order denying Hill's discharge, the Panel applies the clearly erroneous standard to the bankruptcy court's findings of fact, and the "inferences which the judge below has drawn from the facts of the record," but subjects the court's conclusions of law to *de novo* review. *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir.1987) (citation omitted).

### Discussion

A. **Whether the bankruptcy court erred in sustaining an objection to a claimed exemption under 11 U.S.C. § 522(g), based on the reconveyance of Hill's residence to Hill and his wife prior to the bankruptcy upon the filing of a complaint by a creditor, where the statute by its terms precludes a homestead only where the debtor's property has been recovered by a "trustee."**

■ Section 522(g) provides that

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

11 U.S.C. § 522(g).[3] Section 522(g) allows the debtor to exempt property that the trustee recovers, subject to certain limitations. In essence, this section allows a debtor to exempt property recovered by the trustee, transferred as a result of avoidable preferences, fraudulent conveyances and statutory liens, among others, "to the extent that the debtor could have exempted such property as long as the transfer was involuntary" (such as by the fixing of a judicial lien) and the property involved was not concealed by the debtor. 4 Lawrence P. King, *Collier on Bankruptcy*, ¶ 522.12[1] (15th Ed. Rev'd 2007). Likewise, the debtor may claim an exemption over property recovered by the trustee if the trustee recovers such property that was subject to a lien which the debtor could have avoided under § 522(f)(2). *Id.*

In this case the bankruptcy court held that Hill may not claim a homestead exemption on the West Newbury property because the property was "recovered" when Mrs. Hill caused the retransfer of this property to her and Hill, as tenants by the entirety, in response to the lawsuit

filed by creditor Stornawaye. The bankruptcy court determined that Hill is not entitled to any amount of the homestead exemption under § 522(g) because even though it was a creditor, and not the trustee "recovering" the property, the creditor was acting for the benefit of the estate, just as the trustee would. Following *In re Ringham*, 294 B.R. 204, the bankruptcy court stated in its decision that "the language of 522(g) requires the Trustee or a creditor acting in a similar capacity to have taken some action which has resulted in the recovery of the property." The court also found that the "recovery" can occur pre-petition as in the case of *In re Carpenter*, 56 B.R. 704. The Panel disagrees.

The issue before the court in *Ringham* was whether the trustee must first avoid a second mortgage granted by the debtor to her mother approximately six weeks before she filed a voluntary petition under Chapter 7 "for purposes of triggering the prohibition against exempting voluntarily transferred property under 11 U.S.C. § 522(g)(2)." 294 B.R. at 204–205. The debtor's mother discharged the mortgage one week before the Chapter 7 trustee filed an adversary proceeding against her to avoid the mortgage under § 547(b), and after the Chapter 7 trustee had announced that he would be filing such preference action and recover any amounts paid to her. The debtor's mother sought the dismissal of the adversary proceeding, attaching the discharge of the second mortgage to the answer to the complaint.

The *Ringham* court found that the trustee's actions in warning the debtor's mother that it would challenge the second mortgage as a preferential or fraudulent transfer, are sufficient to constitute a re-

3. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*, applicable in the case at bar.

covery for purposes of § 522(g). The court further found that the debtor voluntarily granted her mother a second mortgage within the preference period which, but for the Trustee's objection to the homestead exemption, would have resulted in a "no asset" case, and no distribution to creditors. The court declined to reward the debtor's "shoddy pre-bankruptcy planning" by sanctioning the post-petition discharge of the second mortgage. For these reasons the court sustained the trustee's objection to the debtor's homestead exemption.

In *Carpenter*, the debtor was sued by a creditor, and foreseeing the entry of judgment in the creditor's favor, transferred his interest in the residence to his wife. Judgment in the amount of $6,890 was entered in favor of the creditor ten days later. The creditor was unable to collect his judgment from the transferred property and thus, filed a state court action against the debtor to set aside the conveyance of the real estate. The conveyance was declared void under the Uniform Fraudulent Conveyance Act. The state court ordered the debtor's wife to reconvey the property to the debtor "in order that it may be reached for execution." 56 B.R. at 705. Soon thereafter, the creditor levied its execution against the property and three weeks later the debtor filed his Chapter 7 bankruptcy petition. The debtor moved to avoid the judicial lien and the creditor objected. The court then entertained the question of whether an exemption may be claimed in property belonging to the debtor by virtue of a recent judicial order mandating the transfer of the property under debtor's name, because the prior conveyance was declared void as being fraudulent. *Id.* The court avoided the judicial lien pursuant to § 547 but declined to accept the debtor's position that the trustee could be the only party in interest to recover property for the exemption to

be lost under § 522(g). The court reasoned that the debtor had been unsuccessful in placing his assets beyond the creditors' reach, and the creditor accomplished just what the trustee would have been required to do: seek the retransfer to debtor's name of property fraudulently conveyed by him. The court concluded that to find otherwise would have frustrated the intention of § 522(g) by rewarding a debtor because the fraudulent transfer and the avoidance of the same sought by a creditor occurred prior to the filing of bankruptcy. Although the *Carpenter* court was particularly critical of the debtor's position ("[t]his argument would give unparalleled meaning to the cliche 'form over substance.'" *Id.* at 707), it recognized that "a creditor acting on its own behalf may not rely upon § 522(g)(1) to defeat a debtor's claim of exemption." *Id.*

The language of § 522(g)(1) expresses Congress' intent to prevent the situation in which a trustee incurs expenses, to be paid by the estate, to recover fraudulently conveyed property, only to have the debtor exempt it after the effort has been made. "A debtor who has committed fraudulent acts, either before or during a bankruptcy proceeding, should not be allowed to profit from the protection provided by the exemptions." *Hitt v. Glass (In re Glass)*, 164 B.R. 759, 765 (9th Cir. BAP 1994). In this case, Stornawaye filed an action to avoid a fraudulent conveyance before the bankruptcy was filed, and a few days later, having the benefit of legal advice, Mrs. Hill retransferred the property to herself and Hill. Neither the trustee nor the creditor spent substantial time or effort to "recover" the West Newbury property over which Hill claims the homestead exemption, as the property was reconveyed three days after Stornawaye filed the state court complaint. Also, the statute is clear in that the debtor may only exempt property

when the trustee recovers it under one of the listed sections in the statute, if the transfer was not voluntary and the debtor did not conceal the same.

The Panel must interpret § 522(g) in a manner consistent with the plain meaning of its language. *Martin v. Bajgar (In re Bajgar),* 104 F.3d 495, 499 (1st Cir.1997) ("We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face."). The statute specifically provides who must recover the property, how the property is to be recovered, and the debtor's limitations, in order for a debtor to claim exemption rights in property recovered by the trustee. The language of § 522(g), in this regard, is plain and unambiguous, and thus, our function is to "enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The term "creditor" is not used interchangeably with the term "trustee" in the Bankruptcy Code.

In this case, the bankruptcy court concluded that Hill is not entitled to the exemption because the creditor was acting in a similar capacity as a trustee when it "recovered" the property prior to the filing of the petition. However, by filing a prepetition state court action to avoid a fraudulent transfer in order to collect its claim, Stornawaye was acting on its own behalf and not in a similar capacity as a trustee, who would have recovered the asset in order to distribute the proceeds of its sale in accordance with the provisions of the Bankruptcy Code.

In its brief, Stornawaye argues that even if this Panel were to find the bankruptcy court's interpretation of § 522(g)(1) erroneous, such error is harmless. "By finding that these transfers were fraudulent pursuant to the provisions of 11 U.S.C. § 727(a)(2)(A), the court's decision

provided the basis for the denial of [Hill's] homestead exemption on these separate grounds, without actually stating so." Stornawaye argues that one of the proper remedies for a fraudulent transfer is to disregard the conveyance. Thus, if we disregard the two transfers the bankruptcy court found fraudulent, we are left with the titleholders of the West Newbury property being Mr. and Mrs. Hill, without the benefit of any homestead declaration. Stornawaye fails to cite any case law in support of this position and its argument lacks any merit. The bankruptcy court did not avoid these transfers, and it did not need to. The court denied the discharge based on its determination that these transfers had taken place with the intent to defraud a creditor, even when the property had already been reconveyed to its rightful titleholders.

In view of the above, the Panel finds that the bankruptcy court erred in sustaining the objection to the claimed exemption pursuant to § 522(g) in favor of Stornawaye because the transfer was caused prepetition by a creditor acting for its own benefit, and not by the trustee's action under §§ 510(c)(2), 542, 543, 550, 551, or 553 of the Bankruptcy Code.

**B. Whether the bankruptcy court erred in ruling that Hill's homestead exemption should be capped at $125,000 pursuant to 11 U.S.C. § 522(p), an amendment introduced under BAPCPA, where Hill's petition was filed before the amendment became effective; April 20, 2005.**

Both parties agree that the bankruptcy court erred in ruling that the homestead exemption should be capped at $125,000 pursuant to § 522(p). The bankruptcy court erred in applying § 522(p), an amendment introduced under BAPCPA, which became effective upon enactment on April 20, 2005. "The amendments made

by sections 308, 322,[4] and 330 shall apply with respect to cases commenced under title 11, United States Code, on or after the date of the enactment of this Act." BAPCPA § 1501(b)(2). The bankruptcy petition in this case was filed on April 4, 2005, approximately two weeks before § 522(p) became effective; thus, the $125,000 cap contemplated in § 522(p) is not applicable in this case.

### C. Whether the bankruptcy court erred in denying Hill's discharge under 11 U.S.C. § 727(a)(2)(A) and (B), where an asset was omitted from Schedule B but was disclosed in the Statement of Financial Affairs from the outset.

Section 727(a)(2)(A) and (B) provide that the court shall grant a debtor a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2)(A), (B).

The question before the bankruptcy court was whether "the actions and conduct of [Hill] in failing to turn over to the Trustee the entire proceeds of his pre-petition federal income tax refunds constitute a knowing and fraudulent withholding of property of the estate and a knowing and intentional transfer of property of the estate within one year of [Hill's] bankruptcy filing or continuing within one year of [Hill's] bankruptcy filing, with the intent to hinder, delay, or defraud a creditor of the estate."

In its determination of "intent to defraud," the bankruptcy court considered *Marrama*'s "objective indicia" as cited above, to wit, "the insider relationship; retention of possession, benefit, or use; lack of adequacy of consideration; financial condition of the Debtor; existence or cumulative effect of the [pattern] or series of transactions; the general chronology of the events and transactions; and an attempt by the Debtor to keep these transfers a secret." The court concluded that Hill transferred the 2003 tax refund to his wife, an insider, within one year prior to the bankruptcy petition, with the "intent to delay, hinder, or defraud his creditors" and thus, denied him the discharge under § 727(a)(2)(A). To this effect the court took into account that Hill's wife deposited the 2003 tax refund a few hours after the filing of the petition into her own account, that Hill retained *de facto* possession of the property, that Hill never included this asset in Schedule B and the transfer of other joint assets to Mrs. Hill.

As to the 2004 tax refund, the bankruptcy court stated that no grounds existed to deny the discharge pursuant to § 727(a)(2)(B) "particularly because they were disclosed in Schedule B as originally filed, even though only as an estimate." Both tax refunds were deposited in Mrs. Hill's bank account; thus the determinative factor for the bankruptcy court's decision to deny the discharge under § 727(a)(2)(A) was that the 2003 tax refund was not listed in Schedule B, as opposed to the 2004 tax refund.

■ Hill argues that there could not have been any concealment because the 2003 tax refund was, in fact, disclosed in

---

4. Section 322 of BAPCPA amends § 522 of title 11 by adding at the end subsections "p" and "q", and § 104(b) of title 11 by inserting "522(p), 522(q)" after "522(n)".

the Statement of Financial Affairs from the outset of the case, and that the bankruptcy court "mistakenly overlooked this obvious point." Furthermore, Hill argues that there was no reason to treat the 2004 tax refund differently from the 2003 tax refund, since both of them were disclosed from the outset of the case.

 We review the bankruptcy court's findings that the transfer of the 2003 tax refund to Hill's wife took place with the "intent to hinder delay or defraud a creditor," for clear error. Upon review of the record, the Panel finds that the bankruptcy court did not err in its decision to deny Hill's discharge based on § 727(a)(2)(A). Hill failed to show that the bankruptcy court's finding of transfer of property with the intent to hinder delay or defraud was clearly erroneous. There is ample evidence in the record to sustain the court's findings and the Panel cannot conclude that they were based on an obviously mistaken assessment of the evidence presented at trial.

The information Hill provided in the Statement of Financial Affairs is not the same as he should have included in Schedule B. In Schedule B, debtors provide a list of all their personal property at the time of the filing of the bankruptcy petition. Specifically, item 18 of Schedule B requires debtors to state "[o]ther liquidated debts owing debtor including tax refunds." This statement was not filled accurately even though Hill received the 2003 tax refund only days before the filing of the bankruptcy and was deposited in his wife's bank account on that same day. Hill claims that even though the tax refund was not included in Schedule B, it was included in the Statement of Financial Affairs. However, the information debtors provide in the Statement of Financial Affairs is different from that in the Schedules. The Statement of Financial Affairs is intended for debtors to disclose past information about

their finances, for instance: debtors' income from employment or operation of business from the beginning of the calendar year to the date the case was commenced, and for the two years immediately preceding that calendar year; income other than from employment or operation of business for the two years immediately preceding the commencement of the case; payments to creditors made within 90 days preceding the bankruptcy filing; all suits to which debtor is or was a party within one year prior to the bankruptcy filing; all property that was repossessed within one year prior to the bankruptcy filing, etc. Including the 2003 tax refund in the Statement of Financial Affairs but failing to include it as an asset in Schedule B leads the reader to conclude that Hill received such refund some time in the past but did not have it at the time of the bankruptcy filing. The petition was filed in April 2005; thus, it would be reasonable to assume that the 2003 tax refund was received close to one year prior to the bankruptcy filing and not days before the bankruptcy filing. The information provided in the Statement of Financial Affairs was clearly misleading as found by the bankruptcy court.

The Panel cannot conclude, as Hill would have us do, that the bankruptcy court's assessment that the circumstances surrounding Hill's omission of the tax refund in Schedule B support a finding of "fraudulent intent", is misplaced. Therefore, the bankruptcy court did not err in denying Hill's discharge pursuant to § 727(a)(2)(A).

**D.** **Whether the bankruptcy court erred in denying Hill's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) based on the transfer of Hill's residence to his wife, where the property was reconveyed to Hill and his wife prior to the bankruptcy.**

The bankruptcy court found that Hill's transfer of the West Newbury property to

his wife constituted a knowing and intentional transfer of property within one year of his bankruptcy filing with the intent to hinder, delay or defraud a creditor of the estate, inferring the fraudulent intent from the circumstances surrounding the transfer. At trial, the court stated that "[g]iven the economic realities of the refinance and the inconsistencies and her reasons for doing so, one can only-one can infer that it was a cover for a transfer of the home to Mrs. Hill or at least it was incidental to the transfer, not the other way around ... [t]he court does not find Mrs. Hill's testimony credible. For these reasons, [Hill's] discharge will be denied under Count V."

In his appeal, Hill argues that the bankruptcy court did not address the defense he had raised, that there had not been a "transfer" of the property within the meaning of § 727(a)(2)(A), because the property had been reconveyed to him and his wife prior to the filing of the bankruptcy petition, thereby curing the alleged fraudulent conveyance. Hill based his argument on the Ninth Circuit case of *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir.1986).

The First Circuit in the case of *In re Bajgar*, 104 F.3d 495, addressed the issue of whether a fraudulent transfer of a debtor's property within one year before the filing of a bankruptcy voluntary petition is cured for purposes of denying a discharge under § 727(a)(2)(A) if the property was reconveyed to the debtor **after** the bankruptcy petition was filed. In *Bajgar*, the debtor admitted that the transfer had taken place with "actual intent to hinder, delay, or defraud his creditors." *Id.* at 496. The property was retransferred to the debtor, upon the advice of counsel, over one month after one of his creditors filed an objection to discharge under § 727(a)(2)(A). The First Circuit followed the Eleventh Circuit case of *Davis v.*

*Davis (In re Davis)*, 911 F.2d 560 (11th Cir.1990), upon ruling that the "re-transfer subsequent to filing a voluntary bankruptcy petition does not cure the fraudulent transfer, and thus, does not avail the debtor discharge under Section 727." *Bajgar*, 104 F.3d at 497. The *Bajgar* court observed that the plain language of the statute and its legislative history point to that conclusion, although it specifically avoided determining whether the same conclusion would apply if the property had been reconveyed **prior** to the bankruptcy filing. *Id.* at 499 ("We need not decide now either the effect of a reconveyance made prior to the filing of a voluntary bankruptcy petition or the question of a retransfer effected immediately following the filing of an involuntary petition.") Although distinguishing it, the First Circuit in *Bajgar* cited extensively the Ninth Circuit case of *Adeeb*, 787 F.2d 1339, which interpreted the term "transferred" to mean "transferred and remained transferred" within the context of § 727(a)(2)(A). The *Bajgar* court acknowledged that reading the word "transferred" to mean "transferred and remained transferred" could be construed to advance the purpose of the Bankruptcy Act when, for instance, presented with an "honest but unfortunate debtor." *Bajgar*, 104 F.3d at 501.

In *Adeeb*, faced with the demands from his creditors, the debtor consulted with an attorney with little or no bankruptcy experience, who advised him to transfer his properties to third parties who could be trusted, for no consideration. *Adeeb*, 787 F.2d at 1341. Later, he obtained advice from more experienced bankruptcy counsel, who recommended that he reconvey his properties back to him and disclose the transfers to his creditors. The debtor immediately began to reverse the transfers. *Id.* While in the midst of retransferring the properties, the debtor called a meeting of his creditors and told them about the

transfers and their reversals. Before the debtor was able to conclude the reversals, several unsecured creditors filed an involuntary petition against him. The debtor decided not to contest the involuntary petition and a few days later he filed a voluntary petition. One of the debtor's creditors objected his discharge based on § 727(a)(2)(A).

The *Adeeb* court found that the debtor transferred the properties with actual intent to hinder or delay a creditor and that lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy, and reversed the lower court's decision by finding that "a debtor who transfers property within one year of bankruptcy with the intent penalized by § 727(a)(2)(A), may not be denied discharge of his debts if he reveals the transfers to his creditors, recovers substantially all of the property before he files his bankruptcy petition, and is otherwise qualified for a discharge." *Id.* at 1345. The *Adeeb* court stated: "[i]n our view, reading 'transferred' as used in section 727(a)(2)(A) to mean 'transferred and remained transferred' is most consistent with the legislative purpose of the section." *Id.* at 1344. "The language of Section 727(a)(2)(A) demonstrates that Congress intended to deny discharge to debtors who take actions designed to keep their assets from their creditors either by hiding the assets until after they obtain their discharge in bankruptcy or by destroying them." *Id.* at 1345 (citing D. Cowans, *Cowans Bankruptcy Law and Practice* § 5.20 (interim ed.1983)). The *Adeeb* court concluded that "the only type of transfer that has the effect of keeping assets from creditors is a transfer in which the property remains transferred at the time the bankruptcy petition is filed." *Id.* Determinative in the court's decision was the fact that if, under those circumstances, a debtor is informed that his ac-

tion bars him from receiving a discharge, he would have no incentive to reverse the transfer and recover the property prior to bankruptcy. On the contrary, he will have an incentive to hide his assets. *Id.*

Recently, in the case of *In re Paulding*, 370 B.R. 11 (Bankr.D.Mass.2007), confronted with a situation similar to the one before us, the court analyzed the *Bajgar* case in light of the fact that the fraudulent conveyance had been reversed before the filing of the Chapter 7 petition. The *Paulding* court made an in depth analysis of the *Bajgar* decision and concluded that "the First Circuit's refusal to construe the term 'transferred' as meaning "transferred and remaining transferred" counsels against this Court's adoption of the *Adeeb* approach absent compelling evidence, not present in the existing record." *Id.* at 20. However, the court pointed out that the First Circuit's declination to decide whether a reconveyance prior to the bankruptcy filing cures a fraudulent transfer "may be an indication of its hesitancy to choose between conflicting policies, namely the enforcement of a statute whose meaning is plain according to its terms ... versus the equitable and practical considerations." *Id.* (citations omitted).

Since the discharge is being denied on other grounds, a decision on this issue will not change the outcome of this appeal. We thus defer the issue, as it may be "for Congress to determine whether or not this exception should be recast." *Bajgar*, 104 F.3d at 502.

**E. Whether the bankruptcy court erred in denying Hill's discharge based on a "false oath" under 11 U.S.C. § 727(a)(4)(A), where the asset was not disclosed on Schedule B but was included in the Statement of Financial Affairs from the outset.**

Section 727(a)(4)(A) provides that the court shall grant the debtor a discharge

unless the debtor knowingly and fraudulently, or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A).

The bankruptcy court found that Hill made a false oath by omitting the 2003 tax refund from Schedule B of his petition, that he did so knowingly, fraudulently, with reckless disregard, and not due to a mere mistake or inadvertence. The court based its decision on the fact that Hill received the 2003 tax refund check in the amount of $11,063, only days before he filed his bankruptcy petition and his wife deposited the check in her account just hours after the petition was filed. In spite of this, Hill never included this asset in Schedule B, although it was included in the Statement of Financial Affairs in the amount of $10,000. In September 2005, Hill amended the Statement of Financial Affairs to include the exact amount of the 2003 tax refund. Hill amended his Schedules on various occasions but never to include this tax refund in Schedule B, and he waited until December 2005 to amend the Statement of Financial Affairs to explain what had happened to the 2003 refund.

As we affirmed the § 727(a)(2)(A) count which warrants denial of the discharge, we need not address this § 727(a)(4)(A) count.

### Conclusion

The Panel concludes that the bankruptcy court erred in sustaining Stornawaye's objection to Hill's claimed exemption pursuant to § 522(g), and affirms the order denying Hill's discharge. We need not reach the question of whether the bankruptcy court erred in denying Hill's discharge based on a "false oath" under § 727(a)(4)(A) and based on the transfer of Hill's residence to his wife, where the property was reconveyed to Hill and his wife prior to bankruptcy under § 727(a)(2)(A).

The order sustaining Stornawaye's objection to Hill's claim of a homestead exemption is **REVERSED.** The order denying Hill's discharge is **AFFIRMED.**